UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

JUN 2 1 2022

Clerk, U.S. District Court
Texas Eastern

| | |
|---|---|
| JUSTIN TATUM, | § |
| | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| DOLLAR CONNECT, LLC a Florida Limited | § |
| Liability Company, **LEAD FLASH, LLC**, a | § |
| Florida Limited Liability Company, **REGENCY** | § |
| **MARKETING, LLC**, a Florida Limited Liability | § |
| Company, **BRIAN S CLOUSE, JEFFREY W** | § |
| **KLEIMAN**, and **JOHN DOES 1-10** | § |
| Defendants. | § |
| | § |

6:22-CV-228
Barker/Mitchell

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.    The Plaintiff is JUSTIN TATUM ("Plaintiff") a natural person, resident of the Eastern

District of Texas, and was present in Texas for all automated text messages, in this case in Tyler

County, Texas.

2.    Defendant DOLLAR CONNECT, LLC ("Dollar") is a Limited Liability Company

organized and existing under the laws of Florida with its principal address at 5030 Champion

Boulevard, Suite G11-118 Boca Raton, Florida 33486 and can be served via registered agent

Corporation Service Company at 1201 Hays Street, Tallahassee, Florida 32301.

3.    Defendant LEAD FLASH, LLC ("Lead Flash") is a Limited Liability Company

organized and existing under the laws of Florida with its principal address at 5030 Champion

Boulevard, Suite G11-118 Boca Raton, Florida 33496 and can be served via registered agent

Corporation Service Company at 1201 Hays Street, Tallahassee, Florida 32301.

1

4.      Defendant REGENCY MARKETING, LLC ("Regency") is a Limited Liability Company organized and existing under the laws of Florida with its principal address at 5030 Champion Boulevard, Suite G11-118 Boca Raton, Florida 33496 and can be served via registered agent Corporation Service Company at 1201 Hays Street, Tallahassee, Florida 32301.

5.      Defendant BRIAN SCOTT CLOUSE ("Clouse") is a natural person, resident of Massachusetts, a prior officer of Defendants Dollar, Lead Flash, and Regency, and can be served at 2 Avery Street, apartment 23E, Boston, Massachusetts 02111.

6.      Defendant JEFFERY WILLIAMS KLEIMAN ("Kleiman") is a natural person, resident of Florida, a prior officer of Defendants Dollar, Lead Flash, and Regency, and can be served at 3907 S Ocean Boulevard, Highland Beach, Florida 33487.

7.      Defendant JOHN DOES 1-10 ("John Does") are unknown lenders that were business partners with Defendant Dollar.

8.      Defendants Dollar, Lead Flash, Regency, Clouse, and Kleiman are hereinafter collectively referred together as "Defendants".

JURISDICTION AND VENUE

9.      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' tele market in robocalls to Plaintiff; adds little complexity to the case.

10.     Personal Jurisdiction.  This Court has general personal jurisdiction over the defendants because they have repeatedly placed calls to Texas residents, derive revenue from Texas

2

residents, and they sell goods and services to Texas residents, including the Plaintiff.

11.     Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Eastern District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

12.     This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

13.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

14.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by

3

rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

17.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

18.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

19.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

20.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

21.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

agreement be executed as a condition of purchasing any good or service.

22.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

23.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

24.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

25.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

                              OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

26.     In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative

technologies through which to send bulk solicitations cheaply.

27.     One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

28.     An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

29.     The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

30.     Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

31.     Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

32.     A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

33.     Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon &*

*Schuster, Inc.*, 569 F .3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

34.     Plaintiff has been on the National Do-Not-Call Registry since December 2007.

35.     Defendant Dollar was an online marketplace that would connect people with lending

partners that offer short-term loans and personal loans. If people would qualify, they would be

offered a loan through Defendant Dollar's John Doe lenders.

36.     Defendant Dollar was a lead generator for high-priced payday loans from John Doe

lenders.

37.     Defendant Dollar would receive compensation, in the form of referral fees, from the John

Doe lenders and/or lending partners, aggregators, or other offers that they would connect people

to.

38.     As of sometime in 2021 Defendant Dollar no longer is offering their services, however, is

still an active limited liability company in Florida.

39.     Plaintiff received at least nineteen unauthorized automated text messages ("the text

messages") to his personal cell phone (469) 901-0700 from September 21, 2018, to December

27, 2018, from Defendant Dollar soliciting their goods and services for short term loans. *See*

*"Exhibit A."*

40.     Plaintiff had no prior relationship with Defendant Dollar and did not give them his prior

express written consent to receive the text messages.

41.     Each and every text message Plaintiff received from Defendant Dollar was generated and

sent using an ATDS.

42.     The text messages Plaintiff received from Defendant Dollar were unsolicited

advertisements for predatory loans on behalf of the John Doe lenders that are unknown to

Plaintiff at this time and will be revealed during discovery.

43.     Defendant Dollar has been sued before in a class action for violating the TCPA *Williams-Hopkins v. Fast Flash Marketing, LLC et al*, No. 2:21-cv-02719-SDW-AME (D.NJ, Feb. 16, 2021) where the Plaintiff in this case also received similar unauthorized automated text messages to her personal cell phone offering loans from Defendant Dollar.

44.     The text messages alleged in *Williams-Hopkins v. Fast Flash Marketing, LLC et al* are not only similar to the ones alleged in the case but occurred in the same timeframe in 2018.

45.     On November 3, 2015, the articles of organization were filed for Defendant Dollar which lists Defendant Lead Flash as an authorized member and manager which was also signed by Defendant Clouse as an authorized representative or member. *See "Exhibit B."*

46.     Defendant Regency's articles of organization were filed and signed by Defendant Kleiman on January 10, 2002, with the two managers listed as Defendants Kleiman and Clouse.

47.     Defendant Lead Flash's articles of organization were filed and signed by Defendant Kleiman on January 17, 2006, with the manager listed as Defendant Regency.

48.     As of 2015 when Defendant Dollar was organized Defendant Lead Flash was still controlled and managed by Defendant Regency. *See "Exhibit C."* Also, during this time Defendant Regency was controlled and operated by Defendants Kleiman and Clouse. *See "Exhibit D."*

49.     On March 28, 2018, Defendants Dollar, Lead Flash, and Regency filed their annual report showing all managing members remained the same since 2015. *See "Exhibit E."*

50.     During 2018 is during the period Plaintiff received the text messages to his personal cell phone from Defendant Dollar that were authorized by Defendants Kleiman and Clouse.

51.     Defendants Kleiman and Clouse knowingly and willfully authorized their agents to send

the text messages using an ATDS to millions of consumers' personal cell phones en mass soliciting their goods and services.

52.     Defendants Kleiman and Clouse knowingly and willfully violated the TCPA because when consumers would get approved for a loan by one of Defendant Dollar's lenders it would benefit Defendant Kleiman and Clouse financially by receiving a commission from the John Doe lenders.

53.     Table below displays the automated text messages made to Plaintiff by Defendant Dollar:

| Number | Date | Time | Caller ID | Notes |
|--------|------|------|-----------|-------|
| 1. | 09/21/2018 | 11:50 AM | 89810 | Automated text message |
| 2. | 09/25/2018 | 12:00 PM | 89810 | Automated text message |
| 3. | 09/27/2018 | 12:02 PM | 89810 | Automated text message |
| 4. | 10/01/2018 | 12:22 PM | 89810 | Automated text message |
| 5. | 10/03/2018 | 11:31 AM | 89810 | Automated text message |
| 6. | 10/05/2018 | 11:50 AM | 89810 | Automated text message |
| 7. | 10/09/2018 | 12:00 PM | 89810 | Automated text message |

| | | | | |
|---|---|---|---|---|
| **8.** | 11/21/2018 | 11:40 AM | 89810 | Automated text message |
| **9.** | 11/27/2018 | 11:36 AM | 89810 | Automated text message |
| **10.** | 11/29/2018 | 11:33 AM | 89810 | Automated text message |
| **11.** | 12/3/2018 | 1:30 PM | 89810 | Automated text message |
| **12.** | 12/5/2018 | 11:15 AM | 89810 | Automated text message |
| **13.** | 12/7/2018 | 12:05 PM | 89810 | Automated text message |
| **14.** | 12/11/2018 | 12:40 PM | 89810 | Automated text message |
| **15.** | 12/13/2018 | 12:10 PM | 89810 | Automated text message |
| **16.** | 12/17/2018 | 12:40 PM | 89810 | Automated text message |
| **17.** | 12/19/2018 | 2:27 PM | 89810 | Automated text message |
| **18.** | 12/21/2018 | 12:35 PM | 89810 | Automated text message |
| **19.** | 12/27/2018 | 12:45 PM | 89810 | Automated text message |

54.     Each and every text message Plaintiff received from Defendant Dollar was placed while knowingly ignoring the national do-not-call registry.  Each and every text message was placed without training their agents/employees on the use of an internal do-not-call policy.

55.     None of the Defendants are registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants' registrations.

56.     None of the Defendants qualify for an exemption under § 302.053.

57.     No emergency necessitated none of the alleged illegal automated text messages.

58.     On information and belief, Defendants did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

59.     On information and belief, the Defendant Dollar did not have a written do-not-call policy while they were sending Mr. Tatum the text messages.

60.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

61.     No emergency necessitated the text messages.

### VICARIOUS LIABILITY OF DEFENDANT JOHN DOES

62.     Defendant John Does are vicariously liable for the text messages that generated the lead for John Does.

63.     The FCC is tasked with promulgating rules and orders related to the enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

64.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

66.    The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

66.    The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

67.    More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

68.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

69.     To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

70.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

71.     Defendant John Does are legally responsible for ensuring that the affiliates that make telemarketing calls or text messages on its behalf comply with the TCPA when so doing.

72.     Defendant John Does knowingly and actively accepted business that originated through illegal text messages.

73.     Defendant John Does knew (or reasonably should have known) that Defendant Dollar was violating the TCPA on its behalf but failed to take effective steps within John Does's power to force Defendant Dollar to cease that conduct.

74.     For example, Defendant John Does had absolute control over whether, and under what circumstances, it would accept a customer from Defendant Dollar.

75.     Defendant John Does also gave interim instructions to Defendant Dollar by providing lead-qualifying instructions and lead volume limits.

76.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

77.     "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

78.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

79.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

80.     Defendant John Does are the liable party as the direct beneficiary of the illegal telemarketing text messages as it stood to gain Plaintiff as a customer when Defendant Dollar solicited Plaintiff for short-term loans.

### DEFENDANTS KLEIMAN AND CLOUSE ARE PERSONALLY LIABLE

81.     Defendants Kleiman and Clouse are personally liable under the "participation theory" of liability because he had direct, personal participation in the conduct that violated the TCPA, or

knowingly authorized such conduct. See, e.g., *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12- 22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015).

82.     Defendants Kleiman and Clouse knew of Defendant Dollar's TCPA violations and directed employees and/or agents of Defendant Dollar to continue making those violations.

83.     Defendants Kleiman and Clouse knew or should have known, that Plaintiff's telephone number was on the National Do-Not-Call Registry long before the text messages were sent, and despite this fact, Defendants Kleiman and Clouse made the decision to direct his agents and/or employees to text the Plaintiff's cell phone number without his prior express written consent.

84.     Defendants Kleiman and Clouse make the day-to-day decisions for Defendant Dollar.

85.     Defendants Kleiman and Clouse made the decision to target Texas telephone numbers for telemarketing purposes using automated text messages, including Plaintiff's number.

86.     Furthermore, Defendants Kleiman and Clouse are also personally liable because they were responsible for ensuring Defendant Dollar's agents and/or employees' were TCPA compliance.

87.     "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

88.     The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motors Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful

conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg.*

*Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*,

619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax; Inc.*, 164 F. Supp. 2d 892

(W.D. Tex. 2001)

89.    Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be
> personally liable under the TCPA if he had direct, personal participation in or
> personally authorized the conduct found to have violated the statute, and was not
> merely tangentially involved.  Individuals who directly (and here, knowingly and
> willfully) violate the TCPA should not escape liability solely because they are
> corporate officers.  As the State persuasive argues, to hold otherwise would allow the
> individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and
> repeat their conduct.  Congress surely did not intend to permit such a result in passing
> the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the
> "central figures" behind the TCPA violations.  They were the two persons who
> controlled all of Blastfax's day-to-day operations.  They both had direct, personal
> involvement in and ultimate control over every aspect of Blastfax's wrongful conduct
> that violate the TCPA, and/or directly controlled and authorized this conduct.  And
> they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg
> and Michael Horne had good reason to believe they were running a business that
> violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued
> to direct their company to send unsolicited intrastate fax advertisements.  This is fare
> more than a simple derivative liability case.  Accordingly, the Court *899 holds
> defendants Greg and Michael Horne are jointly and severally liable with Defendant
> Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax,
> Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

90.    The Same Court held that corporate officers were also personally liable for DTPA
violations:

> The State contends Greg and Michael Horne are personally liable for any DTPA
> damages because they were solely responsible for the violating conduct.....For the
> same reasons discussed in finding the individual defendants personally liable under
> the TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37

(Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

91.     At all times material to the Complaint, acting alone or in concert with others, Defendants Kleiman and Clouse have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Dollar including the acts or practices set forth in this Complaint.

92.     Defendants Kleiman and Clouse were the managers, principal directors, and operators of Defendant Dollar and controlled the day-to-day operations of Defendant Dollar and directed their employees, agents, and salespersons to make TCPA violating automated text messages and to solicit short-term personal loans.

93.     Defendants Kleiman and Clouse knowingly and willfully ignored the TCPA.

94.     Defendants Kleiman and Clouse are not merely a bystander.  They're the mastermind that schemed, planned, directed, initiated, and controlled the illegal behavior.

95.     Defendants Kleiman and Clouse were well aware this conduct violated the TCPA and Tex. DPTA and refused to alter the behavior. Defendants Kleiman and Clouse were the sole directors of Defendant Dollar and the only individuals with the power to make the unlawful behavior stop.  Yet, they took no steps to stop the behavior because the behavior benefited them financially.

96.     Defendants Lead Flash, Regency, Kleiman, and Clouse operated as a common enterprise while engaging in the deceptive acts and practices and violations of law and formulated, directed,

controlled, had the authority to control, or participated in the acts and practices of Defendant

Dollar that constitutes a common enterprise.

97.     Defendants Kleiman and Clouse should be held jointly and severally liable for both the

TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually

committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and

directed this conduct.

98.     Defendants Kleiman and Clouse should be held liable because to do otherwise would

simply allow them to simply dissolve Dollar, Lead Flash, and Regency and set up new

corporations and repeat their conduct.  This would result in both the TCPA and DTPA being

unenforceable.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

99.     Defendants' automated text messages harmed Plaintiff by causing the very harm that

Congress sought to prevent—a "nuisance and invasion of privacy."

100.    Defendants' automated text messages harmed Plaintiff by trespassing upon and

interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

101.    Defendants' automated text messages harmed Plaintiff by intruding upon Plaintiff's

seclusion.

102.    Plaintiff has been harmed, injured, and damaged by the automated text messages

including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration,

invasion of privacy, and more frequent charging of his cell phone.

## The Plaintiff's cell phone is a residential number

103.    The automated text messages were to Plaintiff's cellular phone (469) 901-0700 which is

18

Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

104.    The actions of Defendant Dollar violated the Texas Business and Commerce Code 305.053 by placing automated text messages to a cell phone which violates 47 USC 227(b). The automated text messages by Defendant Dollar violated Texas law by placing automated text messages to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

105.    The automated text messages by the Defendant Dollar violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code 302.101

106.    The actions of Defendant Dollar violated the Texas Business and Commerce Code § 302.101 by placing solicitation automated text messages to Plaintiff, a Texas resident, without having a valid solicitation registration certificate and a valid bond.

107.    Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation of § 302.101.

### FIRST CAUSE OF ACTION

**Willful and/or Knowing Violation of 47 U.S.C. § 227(b)(1)(A)**
**Telephone Consumer Protection Act of 1991**

**(Against all Defendants)**

108.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

109.    Defendant Dollar and/or their agents placed automated text messages to Plaintiff's cellular telephone.

110.    Plaintiff never consented to receive automated text messages from Defendant Dollar. Plaintiff has had no relationship with Defendant Dollar.

111.    Defendant Dollar's automated text messages were made for purposes of advertising and marketing short-term loans on behalf of their John Doe lenders.  These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

112.    The automated text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

113.    As a result of their unlawful conduct, Defendant Dollar repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful text message campaigns.

114.    Not only did Defendant Dollar make these violating automated text messages, but Defendants and/or their agents also did so "knowingly" and/or "willfully" under 47 U.S.C. § 227 (b)(3)(C).

115.    If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

116.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

117.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

118.    Defendants sent automated text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

119.    Plaintiff was statutorily damaged at least nineteen (19) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the automated text messages described above, in the amount of $500 per automated text message.

120.    Plaintiff is entitled to an award of at least $500 in damages for each such violation.

    47 U.S.C. § 227(c)(5)(B).

121.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## THIRD CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

122.   Plaintiff incorporates the foregoing allegations as if set forth herein.

123.   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing automated text messages to Mr. Tatum cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

124.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

125.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c)

### FOURTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

126.   Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

127.   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation automated text messages to Plaintiff's cellular telephone number without his prior express written consent.

128.   Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

22

129.     Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d).**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Justin Tatum prays for judgment against the defendant jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.     An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein:

D.     An award of $1500 per automated text message in statutory damages arising from the TCPA intentional violations jointly and severally against the corporations and individuals for 19 automated text messages.

E.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.     An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.     An award to Mr. Tatum of damages, as allowed by law under the TCPA;

H.     An award to Mr. Tatum of interest, costs, and attorneys' fees, as allowed by law and equity

I.     Such further relief as the Court deems necessary, just, and proper.

23

June 17, 2022,                                    Respectfully submitted,

                                                 Justin Tatum
                                                 Plaintiff, Pro Se
                                                 471 Utah Avenue
                                                 Tyler, Texas 75704
                                                 469-901-0700
                                                 justintatum212@hotmail.com